(No. 79-CC-1018—■

TALANDIS CONSTRUCTION CORPORATION and UNITED PACIFIC INSURANCE COMPANY, Assignee of Talandis Construction Corporation, Claimants, v. THE STATE OF ILLINOIS and ILLINOIS BUILDING AUTHORITY, Respondents.

*Opinion filed June 7, 1982.*

GILMARTIN, WISNER and HALLENBECK, LTD., for Claimants.

TYRONE C. FAHNER, Attorney General (SAUL R. WEXLER, Special Assistant Attorney General, of counsel), for Respondent.

■

HOLDERMAN, J.

On January 24, 1968, Claimant, a general contractor, entered into a contract to erect three buildings for the University of Illinois at Urbana, Illinois.

The largest and most complex building was the Small Animal Clinic. This structure comprised over

91,000 square feet of interior floor area for classrooms, offices, laboratories, and adjunct facilities. The clinic building included one level below the ground, a second story at ground level and a third story. The building was in the form of a cross with the arms of the cross being extended into the four points of the compass as a west wing, north wing, east wing and south wing.

The west wing of the clinic contained the distribution center for heating and air conditioning and a complex electrical control system with large electrical transformers necessary for operation of the equipment. From this control center, in the west wing of the clinic, distribution of electrical service, ventilating, and air conditioning was to be made to the entire clinic building and, by an underground pipe chase, to the hospital.

The second building, the Large Animal Hospital, comprised 25,000 square feet of interior floor area on a first story, with operating room and stalls for large animals, and with a second story hayloft and mechanical equipment room.

The third building was a boiler plant which enclosed 8,800 square feet of interior area for use as a central boiler plant. The boiler plant consisted of a one story and lower level boiler area with the cooling towers on the roof and was designed to be the location of the heating and air conditioning equipment.

Talandis started construction with preliminary site work, grading, and excavation preparatory to the beginning of the concrete work for the footings, columns, and slabs. In late spring or early summer of 1968, the IBA architect orally directed Talandis to stay away from the west wing area pending completion of certain drawings applicable to part of the west wing. The contractor

followed these directions, working in other areas and holding the work in the critical west wing area on the basis of these verbal instructions.

The reason for the change in the west wing was related to the fact that the University, the Illinois Building Authority, and the architect were planning for the eventual construction of an even larger project on adjacent land that was to be known as the Large Animal Clinic. Perkins & Will, the IBA architect, was architect for the Large Animal Clinic. The hold was occasioned by the redesign of the west wing of the Small Animal Clinic so as to accommodate an eventual connection between the Large Animal Clinic and the Small Animal Clinic. The Large Animal Clinic was not part of the construction contract with Talandis.

Pursuant to the instructions of the architect, Talandis stayed away from the critical west wing area until early August 1968. In that month, Talandis insisted on going forward in the held area unless a written hold order was issued. On August 15, 1968, Perkins & Will, the architect on the project, issued a written hold order.

After the issuance of the written hold order, the contractor repeatedly received assurances that the drawings would be released shortly. Acting on these assurances, Talandis proceeded with work in other areas of the job. As it turned out, the hold order was not released until March 31, 1969, seven and one-half months after work was stopped in the west wing.

It is the contention of Claimant that the west wing construction was critical to the work and that the coordination of the job depended upon its completion. Claimant further contends that the failure to release the hold on the west wing, for the extended period, completely

disrupted the job, and ultimately Talandis was working with the clinic building erected substantially in areas other than in the west wing, and there was nothing but a hole in the ground at the location of the critical mechanical, electrical and heating distribution center of the west wing.

Claimant alleges that as a result of the breach of contract on the part of Respondent, including the delays caused by hold orders, it was damaged in the amount of $993,176.60.

Claimant filed a lawsuit in the circuit court of Cook County attempting to recover said sum as damages. The Honorable Judge Emmett Mossissey held hearings covering a period of four months in August, September, October, and November 1975. The transcript of these proceedings comprised some 1,582 pages, of which 1,425 pages were devoted to testimony and the remainder to argument on two separate dates. Forty-nine exhibits were offered by plaintiff, and defendant, Illinois Building Authority, offered 24 exhibits. Many of the exhibits were group exhibits and many exhibits contained multiple pages ranging from 20 to several hundred. The case was extensively briefed for the trial judge and on November 21, 1975, he heard arguments by counsel for both sides.

After additional briefing and argument on the issue of damages on December 9, 1975, Judge Mossissey entered a judgment in favor of Claimant on December 10, 1975, in the amount of $437,841.81.

The Illinois Building Authority appealed to the appellate court and raised the issue as to the jurisdiction of the circuit court of Cook County to hear said case. In the case of *People ex rel. Resnik v. Curtis & Davis* (1978),

58 Ill. App. 3d 28, 373 N.E.2d 772, a decision was rendered to the effect that a case of this nature should be filed in the Court of Claims. In *Talandis Construction Corporation v. Illinois Building Authority* (1978), 23 Ill. App. 3d 929, 321 N.E.2d 154, the appellate court entered its opinion to the effect that the Court of Claims had proper jurisdiction in this case and the circuit court of Cook County did not have jurisdiction in cases of this nature. After the petition for leave to appeal was denied by the Illinois Supreme Court, Talandis filed this action in the Court of Claims.

The parties have agreed that the evidence presented before the circuit court of Cook County and the exhibits that were offered by the parties could be taken as evidence in the Court of Claims with the proviso that both parties, if they so desired, could offer additional evidence.

The record consistently shows that the many delays in construction were caused by Respondent; in fact, one delay on a hold order was for over seven months. This did not include the time the contractor held up construction at the request of Respondent.

It is evident from the record that the construction of the west wing was vital to the continuation of the construction work. There are many causes for the delays—one of them being that Respondent did not have title to some of the property on which the construction work was to be done. This certainly shows a lack of preparation on the part of Respondent. In *Warchol Construction Co. v. State of Illinois* (1979), 32 Ill. Ct. Cl. 679, this Court laid down the rule that delays in performance caused by the State creates a situation where the damaged party, Claimant, is entitled to an award. See also 30 Ill. Ct. Cl. 388.

This Court has previously held that when Respondent causes delays, either by hold orders or mistakes in planning, etc., which result in extra expense and damages to Claimant, then Claimant should be reimbursed.

It is the Court's opinion that the amount arrived at by the circuit court judge of Cook County, after four months of hearings, is reasonable. The record discloses how this figure was arrived at and while it does not meet the amount requested by Claimant, the Court believes it is a fair and reasonable award for damages incurred.

Claimant also requests interest because of the long delay in receiving payment for work done. This court, in *Response v. State of Illinois* (1978), 32 Ill. Ct. Cl. 209, 210, held that the State is not liable for interest penalties unless such payment is specifically authorized by statute. There does not seem to be any statute authorizing the payment of interest in this case; therefore the claim for interest is denied. See also *Toombs v. State of Illinois* (1977), 32 Ill. Ct. Cl. 205.

An award is hereby entered in favor of Claimant in the amount of four hundred thirty seven thousand eight hundred forty one and 81/100 ($437,841.81) dollars.